*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* M. M. L. DIXON, Minor.

UNPUBLISHED
April 20, 2023

No. 362765
Wayne Circuit Court
Family Division
LC No. 2019-001161-NA

Before: GARRETT, P.J., and K. F. KELLY and HOOD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to her minor child, MMLD, under MCL 712A.19b(3)(i) (parental rights were terminated to a sibling because of serious or chronic neglect and respondent has failed to rectify those conditions) and (j) (reasonable likelihood of harm if returned to parent's home). On appeal, respondent-mother argues that the trial court improperly terminated her parental rights without considering her improvement and willingness to seek further treatment. The trial court did not clearly err when it found statutory grounds to terminate respondent-mother's parental rights because respondent-mother's lack of suitable housing, untreated mental health issues, and poor parenting skills posed a reasonable likelihood of harm to MMLD. This evidence, together with MMLD's stability with a foster family willing to adopt her, also supported the trial court's finding that termination was in MMLD's best interest. Accordingly, we affirm.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), became involved with respondent-mother shortly after she gave birth to a different child, MD, in June 2019. MD was removed from respondent-mother's custody following allegations of inadequate housing and improper supervision, and concerns that respondent-mother's cognitive and mental health challenges prevented her from providing proper care to MD. Ultimately, after two years of proceedings, respondent-mother's parental rights were terminated to MD in July 2021 under MCL 712A.19b(3)(c)(i) (conditions that led to adjudication continue to exist) and (j). Affirming the order of termination, this Court explained that respondent-mother failed to take advantage of the services offered to her, or services were terminated due to respondent-mother's "noncompliance, resistance, or hostility towards those attempting to supply those services." *In re Dixon Minor*,

-1-

unpublished per curiam opinion of the Court of Appeals, issued August 18, 2022 (Docket No. 358282), pp 1, 4.  Respondent-mother failed to complete parenting classes, exhibited aggressive behavior towards service providers, and inconsistently participated in individual therapy.  *Id*. at 5-6.

When the trial court terminated respondent-mother's rights to MD, respondent-mother was already pregnant with MMLD.  In November 2021, MMLD was born, and almost immediately, DHHS petitioned to remove MMLD and terminate respondent-mother's parental rights under MCL 712A.19b(3)(g), (i), and (j).  The referee placed MMLD under the care and supervision of DHHS after finding that it was contrary to the child's welfare to remain with respondent-mother.  Specifically, the referee found that respondent-mother was unable to meet MMLD's needs because she was residing in a halfway house with several other women and had recently transitioned from an adult foster care home.  An amended petition alleged that respondent-mother had cognitive deficits and mental health issues that prevented her from providing proper care to MMLD.  Respondent-mother had been diagnosed with attention deficit hyperactivity disorder (ADHD), bipolar disorder, personality disorder, and post-traumatic stress disorder (PTSD).  The petition also alleged that respondent-mother did not benefit from prior services, did not have proper housing, and had a criminal sexual conduct (CSC) conviction.  Following a preliminary hearing, the referee authorized the petition.

At a combined adjudication trial and termination hearing, the referee took judicial notice of the file involving MD.  Johnesha Groce, child protective specialist for DHHS, testified that the agency received a complaint from the hospital when MMLD was born with concerns that respondent-mother lacked appropriate provisions and housing to care for the baby.  Groce conducted a home visit and discovered that respondent-mother's living arrangements were not suitable to care for MMLD.  Respondent-mother was living in a small room in transitional housing that could not fit a crib or other provisions for a newborn baby.  Groce immediately submitted the original petition in this case after concluding that MMLD could not safely live with respondent-mother.  Groce believed that termination was in MMLD's best interests because respondent-mother rights to MD were terminated for failing to comply with a court-ordered treatment plan, yet the same issues continued to exist—unsuitable housing, lack of employment, and non-participation in mental health treatment.

The primary foster care worker, Chelsee Scherz, was involved in the proceedings with MD.  Scherz explained that MD came into the care of DHHS at birth due to physical neglect by respondent-mother.  Throughout that case, respondent-mother did not comply with her treatment plan to obtain suitable housing, maintain a source of income, and participate in individual therapy and intensive mental health services.  Respondent-mother had been diagnosed with several psychiatric disorders, and the psychiatrist who evaluated her did not believe that she could properly parent on her own without a great deal of outside help.  Respondent-mother was inconsistent with her mental health services, often changing providers because of inappropriate behavior on her part and disagreement with therapists.  As for housing, respondent-mother had a prior criminal sexual conduct (CSC) conviction that posed a significant barrier to finding adequate living arrangements.  DHHS provided respondent-mother with resources to access housing, but she did not follow up with these resources.

According to Scherz, when MMLD was born, respondent-mother had stopped seeing her psychiatrist, was not taking her medication, and was not participating in any other services. As this case proceeded, respondent-mother began regularly attending individual therapy and had restarted appointments with her psychiatrist, but those appointments were only every three months or so—not the type of intensive oversight that respondent-mother needed. Since MMLD was born, respondent-mother had also completed parenting classes, but they were not the specialized classes for parents with a cognitive impairment. Scherz tried to help respondent-mother get into a specialized class, but respondent-mother did not follow up because she felt the class she completed was sufficient. Although respondent-mother appropriately engaged with MMLD during supervised visitation, she struggled with basic needs like changing diapers and feeding the baby. Respondent-mother also still lacked suitable housing, as she was living with a roommate in a boarding home that did not allow children. Scherz testified that respondent-mother had been more open to services during this case, but barriers to reunification—housing, parental skills, and mental health services—still remained.

Scherz also believed that termination was in MMLD's best interest. MMLD lived in a supportive foster home with foster parents who were interested in adoption. Respondent-mother continued to live in unstable housing despite receiving numerous resources to assist her, and it would be "unfair to [MMLD] to have her wait long to achieve permanency." Scherz explained that it would be traumatic for MMLD to continue to grow her bond with respondent-mother and then potentially terminate respondent-mother's rights down the road. Scherz summed up her recommendation:

> I feel like [respondent-mother] could be a successful parent if she would be willing to accept the help that the agencies involved with her have offered her, but she's shown time and time again that she's not willing to accept that help and it is unfortunate, but that is why I feel so strongly that it's in [MMLD's] best interest to have some permanency and be adopted.

Respondent-mother testified and denied that Scherz had told her about the need for specialized parenting classes and intensive psychiatric services. Respondent-mother claimed that she had a housing lead that would become available in about two months, which she first heard about from an "acquaintance" and then spoke to the owner of the home. She did not know how much the rent was for the home, and she admitted that her past CSC conviction made her housing search difficult. For employment, respondent-mother testified that she would be working for the City of Detroit in the next month. She did not know the name of the work program or specific employer and stated that a relative was helping get her the job. She also claimed that she received Social Security income but had forgotten to provide documentation to Scherz. On cross-examination, respondent-mother repeatedly answered "no comment" to several questions, including whether a doctor advised her to stop taking psychiatric medication; whether she had addressed her anger problems since MD's case; whether she was in a different position than during MD's case; and whether she knew how much the upcoming job would pay.

The referee found statutory grounds to exercise jurisdiction over MMLD and statutory grounds to terminate respondent-mother's parental rights under MCL 712A.19b(3)(i) and (j). The referee explained that respondent-mother had unstable housing and a long history of mental illness that was not appropriately treated. The referee noted that Scherz was not required to help

respondent-mother obtain services because MMLD's case had been pre-adjudication, but nonetheless, Scherz provided voluntary assistance. The referee believed Scherz's testimony about the services she had urged respondent-mother to seek out, and did not find respondent-mother's contrary testimony credible. Finally, the referee found that termination was in MMLD's best interest. In doing so, the referee relied primarily on respondent-mother's poor parenting skills and concluded that "her inability to parent her children outweighs any bond that she may have with the child." Respondent-mother also had no "solid lead" on housing or income. The referee recognized that MMLD needed stability and permanency, and it would be difficult to obtain with respondent-mother because of her "uphill battle" to secure housing given her criminal history. While the referee acknowledged that it could provide additional time for respondent-mother to make progress, the referee believed any delay would lead to the same result. Therefore, the referee recommended termination of respondent-mother's parental rights to MMLD. The trial court subsequently issued a written order reflecting these findings.[1]

This appeal followed.

## II. STANDARD OF REVIEW

We review the trial court's determination of statutory grounds and best interests for clear error. *In re Sanborn*, 337 Mich App 252, 272, 276; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (quotation marks and citation omitted).

## III. STATUTORY GROUNDS FOR TERMINATION

Respondent-mother argues that the trial court clearly erred when it found statutory grounds to terminate her parental rights to MMLD under MCL 712A.19b(3)(i) and (j).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). DHHS has the burden to make this showing. MCR 3.977(A)(3). Clear and convincing evidence is clear, direct, and weighty evidence that allows the finder of fact to reach a conclusion without hesitancy. *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995).

We begin with the trial court's finding of statutory grounds to terminate under MCL 712A.19b(3)(j). This provision authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j). For purposes of reviewing this statutory ground, we consider both physical and emotional harm to the child. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "[A] parent's failure to comply with the terms

---

[1] The trial court, adopting the referee's recommendation, also terminated the parental rights of MMLD's unknown father.

and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014).

Clear and convincing evidence supported the trial court's decision to terminate respondent-mother's parental rights to MMLD under MCL 712A.19b(3)(j). First, respondent-mother demonstrated an unwillingness—beginning with MD's case and continuing in these proceedings—to consistently participate in psychiatric services and remain on medication for her mental health illnesses. Respondent-mother's mental health issues—if not adequately treated, as had been the case—presented a risk of harm to MMLD when in respondent-mother's custody. In addition, respondent-mother struggled with basic parenting tasks like changing diapers and managing MMLD's nutritional needs. Scherz testified that respondent-mother did not follow through on a recommendation to participate in a specialized parenting class, and the referee found this testimony credible. We must defer to that credibility determination. See *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016). Finally, respondent-mother was unable to obtain suitable housing to care for MMLD. Respondent-mother's criminal history, and her proven inability to find appropriate housing across multiple years in MD's case and this case, demonstrated that respondent-mother was unlikely to provide a safe and suitable environment to raise MMLD.

Together, clear and convincing evidence supported that there was a reasonable likelihood, based on respondent-mother's conduct, that MMLD would be harmed if placed in respondent-mother's home. See MCL 712A.19b(3)(j). The trial court did not clearly err by finding that this statutory ground for termination had been satisfied. Once at least one statutory ground for termination is established, we "need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). Therefore, we decline to address whether termination was also proper under MCL 712A.19b(3)(i).

## IV.  BEST INTERESTS

Respondent-mother also contends that termination was not in MMLD's best interests and that the trial court erred by taking permanent custody of her child.[2]

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests." *White*, 303 Mich App at 713-714. Factors to

---

[2] The brief filed by respondent-mother's counsel includes the best-interests issue in the statement of questions presented, but, inexcusably, contains no discussion of best interests in the argument section. By counsel's failure, respondent-mother has effectively abandoned the issue on appeal. See *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020) (failure to address the merits of a claim of error constitutes abandonment of the issue). Nevertheless, considering the important liberty interests at stake, we will address the issue based on the trial court record.

consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other relevant considerations are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

The trial court did not clearly err by finding that termination was in MMLD's best interest. The evidence showed that respondent-mother lacked the necessary skills to be a fit parent. She struggled with basic parenting tasks, and Scherz believed that she would not be able to parent without a great deal of help and support. Respondent-mother also declined to participate in the specialized parenting classes that Scherz recommended. MMLD's need for "permanency, stability, and finality, and the advantages of a foster home over the parent's home," also weighed in favor of termination. *Olive/Metts Minors*, 297 Mich App at 42 (citation omitted). MMLD was doing well in her foster placement, and her foster family was willing to adopt her and give her the permanency and stability she deserved. Respondent-mother was consistently unable to obtain suitable housing, while MMLD was in a safe and supportive foster home. Although MMLD had a bond with respondent-mother, Scherz believed it would be harmful to allow that bond to continue to grow when it was unlikely that respondent-mother would accept the necessary help to provide appropriate care for MMLD. For these reasons, we are not left with a definite and firm conviction that the trial court erred by finding that termination was in MMLD's best interest.

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Kirsten Frank Kelly
/s/ Noah P. Hood